[Cite as *Safeair Contrs., Inc. v. Alabasi Constr., Inc.*, 2017-Ohio-7951.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| SAFEAIR CONTRACTORS, INC., | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2016-L-005** |
| ALABASI CONSTRUCTION, INC., et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 13 CV 002540.

Judgment: Reversed and remanded.

*Mark A. Ziccarelli,* Ziccarelli & Martello, 8754 Mentor Avenue, Mentor, OH 44060 (For Plaintiff-Appellant).

*Kim Kelly Alabasi,* Alabasi & Associates Co., LPA, 5368 St. Clair Avenue, Cleveland, OH 44103 (For Defendant-Appellee, Alabasi Construction, Inc.).

*Marshal M. Pitchford,* Roetzel & Andress, L.P.A., 209 South Main Street, Third Floor, Akron, OH 44308 (For Defendant-Appellee, Lake County Metropolitan Housing Authority).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Safeair Contractors, Inc. ("Safeair"), appeals the summary judgment entered by the Lake County Court of Common Pleas in favor of appellees, Alabasi Construction, Inc. ("Alabasi") and the Lake County Metropolitan Housing Authority ("the county"), on Safeair's claims for moneys owed under a construction contract. For the reasons that follow, we reverse and remand.

{¶2}   The county is the owner of the Parkview Place Apartments in Willoughby. Alabasi was the county's general contractor for extensive repairs to be made to the complex. Alabasi hired Safeair as a subcontractor to do asbestos-removal and mold-remediation work. The entire amount of Safeair's subcontract was $37,147.

{¶3}   Safeair completed its work on or about May 26, 2013. It paid its employees the federal prevailing wages. Safeair submitted its certified payroll to CT Consultants, the county's prevailing wage coordinator for the project, as part of Safeair's application for payment. CT Consultants refused to approve Safeair's application since Safeair had not paid its workers the state prevailing wages, as specified in the contract documents. Safeair paid its workers the federal prevailing wages because the project received federal funding, making the Davis-Bacon Act (and federal wages) applicable.

{¶4}   On June 12, 2013, the county's architect sent a "corrective bulletin" to Alabasi, asking it to change the contract documents to require federal, rather than Ohio, prevailing wage rates. A change order was issued on July 23, 2013, which provided:

{¶5}   **THE CONTRACT IS CHANGED AS FOLLOWS:**

{¶6}   * * *

{¶7}   Change the prevailing wage rates to be in compliance with the Davis Bacon Act and related requirements determined by the US Department of Housing and Urban Development in lieu of the prevailing wage [rates] of the Project locality, as issued and prescribed by the Ohio Department of Commerce: Davis Bacon Residential Wage Rates. (Emphasis sic.)

{¶8}   On November 25, 2013, Safeair filed its complaint against Alabasi and the county, seeking to be paid for the work it completed on the project in May 2013. Alabasi and the county filed answers, denying the material allegations of the complaint. On September 16, 2014, the county moved for summary judgment, and Safeair filed a brief

2

in opposition. The trial court granted summary judgment in favor of the county. In its judgment, the court found:

> **{¶9}** Safeair is correct in claiming that the federal prevailing wage rate is the proper rate and that the architect specified the wrong [Ohio] prevailing wage rate when drawing up the documents for the project. * * * Safeair paid its workers the correct federal prevailing wage rather than the contracted state prevailing wage.

**{¶10}** However, the court also found that the change order correcting the prevailing wage rate was not retroactive because, inter alia, it was silent on this issue. As a result, the court found that the change order did not become effective until it was signed on August 9, 2013, some two months after Safeair completed its work. Thus, the trial court found that the change order did not apply to Safeair's contract; that Safeair was required to pay its workers the state prevailing wages; and that, as a result, Safeair owed its workers an additional $7,647.30, which was the difference between the federal and the Ohio wage rates.

**{¶11}** On December 18, 2014, Safeair appealed the trial court's summary judgment in favor of the county. On May 11, 2015, this court dismissed the appeal for lack of a final appealable order since Safeair's complaint against Alabasi remained pending in the trial court. *Safeair Contrs., Inc. v. Alabasi Constr., Inc.*, 11th Dist. Lake No. 2014-L-128, 2015-Ohio-1770, ¶6-7.

**{¶12}** On October 26, 2015, Alabasi moved for summary judgment, and Safeair filed a brief in opposition. On December 11, 2015, the trial court entered summary judgment in favor of Alabasi, for the same reasons it had granted summary judgment in favor of the county.

**{¶13}** Safeair appealed, assigning the following as its sole assignment of error:

{¶14} "The trial court erred to the prejudice of appellant by granting the motion for summary judgment filed by LCHMA and Alabasi."

{¶15} As a preliminary matter, we note that, while the county filed an appellate brief, Alabasi did not.

{¶16} "Summary judgment is a procedural tool that terminates litigation and thus should be entered with circumspection. *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66 * * * (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. Civ.R. 56(C). This court, in *Meloy v. Circle K Store*, 11th Dist. Portage No. 2012-P-0158, 2013-Ohio-2837, stated:

> {¶17} "When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121 * * * (1980). Rather, all doubts and questions must be resolved in the non-moving party's favor. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 * * * (1992). Hence, a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. *Pierson v. Norfork Southern Corp.*, 11th Dist. No. 2002-A-0061, 2003-Ohio-6682, ¶36. In short, the central issue on summary judgment is, 'whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 * * * (1986). On appeal, we review a trial court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996)." *Meloy*, *supra*, at ¶6.

{¶18} Safeair argues that the Davis-Bacon Act applied to the contract since it involved a federally-funded public improvement project. However, the county argues that, because the primary contract between it and Alabasi provided that the Ohio

4

prevailing wage rates applied to all work under the contract, Safeair was contractually obligated to pay the Ohio prevailing wages, even though the only reason the Ohio rate was specified was due to the architect's error.

{¶19} "The Davis-Bacon Act * * * requires that 'contractors and subcontractors on federal construction projects pay qualified employees * * * the prevailing wage rate for their job classification as determined by the Secretary of Labor.'" *IBEW v. Defiance Bd. of County Comm'rs*, 3d Dist. Defiance No. 4-13-05, 2013-Ohio-5198, ¶13, quoting *Frank Bros., Inc., v. Wisconsin Dept. of Transp.*, 409 F.3d 880, 882 (7th Cir.2005); *see* 40 U.S.C. 3142(b).

{¶20} "In Ohio, '[t]he prevailing wage statutes, R.C. 4115 .03 through R.C. 4115.16, require contractors and subcontractors for public improvement projects to pay laborers and mechanics the so-called prevailing wage in the locality where the project is to be performed.'" *IBEW, supra,* at ¶14, quoting *J.A. Croson Co. v. J.A. Guy, Inc.*, 81 Ohio St.3d 346, 349 (1998).

{¶21} However, under R.C. 4115.04(B), certain public improvements are exempt from Ohio's prevailing wage statutes. R.C. 4115.04(B) states, in relevant part:

{¶22} (B) Sections 4115.03 to 4115.16 of the Revised Code do not apply to:

{¶23} (1) Public improvements * * * where the federal government or any of its agencies furnishes by loan or grant all or any part of the funds used in constructing such improvements, provided that the federal government or any of its agencies prescribes predetermined minimum wages to be paid to mechanics and laborers employed in the construction of such improvements[.]

{¶24} Thus, the Davis-Bacon Act requires contractors and subcontractors on federally-assisted public improvement projects to pay their employees the federal

5

prevailing wage rate, and such projects are exempt from Ohio's prevailing wage statutes.

**{¶25}** The Third District's holding in *IBEW, supra*, is pertinent here. In that case, the county advertised for bids on a project specifying the Ohio prevailing wage rate and contractors submitted bids based on that rate. Several months later, federal funding was provided, triggering application of the Davis-Bacon Act. The county then caused the contract to be changed to provide that the Ohio prevailing wage rates no longer applied and that, instead, the Davis-Bacon Act applied. The court held that, because federal funding was involved, compliance with the Davis-Bacon Act was required, which in turn made the exemption in Ohio's prevailing wage statutes applicable. *Id.* at ¶20, 26.

**{¶26}** Here, the trial court found that the federal prevailing wage rate was the proper wage rate and that the county's architect specified the wrong rate when preparing the contract documents. For this reason, the architect asked Alabasi to issue a change order to correct the contract documents to make them comply with the Davis-Bacon Act. The pivotal issue before us is whether the change order applied retroactively to Safeair's contract.

**{¶27}** Safeair argues the change order is ambiguous and should have been interpreted to apply retroactively to its work so that it was only required to pay its workers the federal prevailing wage rate. The county disagrees, suggesting the change order was not retroactive because Safeair had completed its work before the change order was executed.

6

{¶28} It is well-settled that "change orders constitute part of the contract between the parties." *DiGioia Bros. Excavating, Inc. v. Cleveland Dept. of Pub. Util., Div. of Water,* 135 Ohio App.3d 436, 454 (8th Dist.1999).

{¶29} "A contract can only be interpreted if the provisions are ambiguous or uncertain." *Career & Technical Assn. v. Auburn Vocational School Dist. Bd. Of Edn.,* 11th Dist. Lake No. 2013-L-010, 2014-Ohio-1572, ¶18. "Contract language is ambiguous if it is susceptible to two or more reasonable interpretations." *Id.* "The determination of whether provisions in a contract are ambiguous is a legal issue that we review de novo." *Id.* Further, "if the contract language is capable of two reasonable interpretations, there is an issue of fact as to the parties' intent." *Id.* "When a contract term is ambiguous, the court must examine parol or extrinsic evidence to determine the parties' intent." *Id.* "*Such extrinsic evidence may include the circumstances surrounding the parties at the time the contract was made and the objectives the parties intended to accomplish by entering into the contract.*" (Emphasis added.) *Id.*

{¶30} For the reasons that follow, the change order at issue here is ambiguous as to whether it applied retroactively to Safeair's contract: (1) The change order identified the date of the primary contract, i.e., March 18, 2013, which was two months before Safeair completed its work, and provided, "[*t*]*he contract is changed*" to amend the prevailing wage rates to comply with the Davis-Bacon Act. (Emphasis added.) (2) The subject of the change order (the legal prevailing wage rate) was essential to the contract as a whole. Thus, the breadth of the quoted language and the essential nature of the term being corrected indicate the change order applied to all work under the contract, including Safeair's subcontract, not just to work to be performed after the change order was executed.

{¶31} Based on our holding that the change order is ambiguous on the issue of its retroactivity, the intent of the parties is a question of fact. Thus, on remand, the court is instructed to consider all relevant parol evidence to be presented at trial in determining whether the parties intended the change order to apply retroactively.

{¶32} We note the parties' summary-judgment materials include some extrinsic evidence on the retroactivity issue, as follows: (1) Safeair was apparently the first subcontractor that raised the issue regarding the federal rate being the appropriate rate when it presented its certified payroll to CT Consultants for payment. (2) The change order was apparently issued in response to Safeair raising this issue. (3) A job-site meeting was held with the parties, *including Safeair*, to discuss the upcoming change order. (4) Safeair's primary shareholder, Robert Parks, stated in affidavit that the change order changed the "entire contract * * * to reflect that the appropriate wage rate was the federal prevailing wage rate and not the state prevailing wage rate." Based on the foregoing evidence, it could reasonably be inferred the parties intended the change order to apply retroactively to Safeair's subcontract.

{¶33} We therefore hold the trial court erred in entering summary judgment in favor of the county and Alabasi on Safeair's claims.

{¶34} For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings consistent with the opinion.

THOMAS R. WRIGHT, J., concurs with a Concurring Opinion,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

8

_____

THOMAS R. WRIGHT, J., concurs with a Concurring Opinion.

**{¶35}** I agree with the lead opinion that whether the change order applies retroactively or prospectively is ambiguous requiring reversal and remand. I write separately, however, to emphasize two points not included; to establish there is a fact issue in light of the lead's recitation of the evidence; and to address its statement pertaining to the change order occurring as a result of an architect's error.

**{¶36}** First, as the lead concludes, the change order is silent as to whether the change in the wage rates applies prospectively or retroactively for the entirety of the project. The dissent's conclusion that the change order applies prospectively because it was *effective* only once signed by the architect, contractor, and owner is fatally flawed. The change order states in part: "NOT VALID UNTIL SIGNED BY THE ARCHITECT, CONTRACTOR AND OWNER."

**{¶37}** The words "effective" and "valid" are not interchangeable. "Valid" means "legally sufficient; binding." *Black's Law Dictionary* 1586 (8th Ed.2004). No agreement or contract is valid or binding until it is agreed upon by the parties. "Effective" in this context means, "In effect: Operative <The new requirements are *effective* immediately.>", *Webster's II New College Dictionary* 359 (1999), or "in operation at a given time <effective June 1>." *Black's Law Dictionary* 554 (8th Ed.2004).

**{¶38}** The statement on the change order that it is not valid until signed by the architect, contractor, and owner dictates the mode of acceptance, not the effective date. The dissent would unwittingly create a rule of construction not sanctioned. Under the dissent, if a contract is silent as to retroactive on prospective application, it could never apply retroactive to formation. When ambiguous, however, the intent of the parties

9

must be discerned.  *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984).

**{¶39}** Additionally, while the Davis-Bacon Act mandates a minimum wage, it does not restrict the parties' freedom to agree to a higher rate.  *Reidel v. United States*, 43 Fed.Cl 770, 772 (1999); *Conneaut v. Allegheny Sur. Co.,* 128 Ohio App.3d 724, 729, 716 N.E.2d 760 (11th Dist.1998), citing *United States v. Binghamton Constr. Co.*, 347 U.S. 171, 176–177, 74 S.Ct. 438 (1954).  "The Davis-Bacon Act requires that the wages of workmen on a Government construction project shall be 'not less' than the 'minimum wages' specified in a schedule furnished by the Secretary of Labor."  *United States v. Binghamton Const. Co.,* 347 U.S. 171, 172, 74 S.Ct. 438 (1954).  Thus, although R.C. 4115.04(B) provides an exemption, parties may nevertheless agree to use the state's prevailing rate provided it is not less than the specified schedule.

**{¶40}** Further, while I agree with the lead that extrinsic evidence must be considered on remand because the contract does not address the issue before us, *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635, 597 N.E.2d 499 (1992), the lead discusses only the evidence favoring retroactivity and therefore does not demonstrate that there is an issue for trial.  The competing evidence favoring prospective application includes:  the sole owner and shareholder of Alabasi Construction, Hayder Alabasi, states in his affidavit that the contract specifications bid on by SafeAir included the State of Ohio prevailing wage rate for labor on the project; Chris DeLuca states in his affidavit that all other workers on the project, except Safeair's crew, were paid the Ohio prevailing wage rates until the date of the change order; and Robert Chordar, president of TC Architects, Inc., avers in his affidavit that the higher state prevailing wage applied

10

to all work performed by SafeAir's workers because their work "was performed before the change order for wage rates took place."

**{¶41}** "'If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241 [7 O.O.3d 403, 374 N.E.2d 146]. However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term.' *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 449, 474 N.E.2d 271, 272-273." *Davis v. Loopco Industries, Inc.,* 66 Ohio St.3d 64, 66, 609 N.E.2d 144 (1993). The interpretation of the parties' intent is a question for the trier of fact. *Schafer v. Soderberg & Schafer*, 196 Ohio App.3d 458, 2011-Ohio-4687, 964 N.E.2d 24, ¶75 (6th Dist.); *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶13.

**{¶42}** Finally, I take exception with the lead's statement that "the only reason the Ohio rate was specified was due to the architect's error." As written, it is unclear whether the lead is stating this as the county's position or alternatively, as a determined fact. It is neither.

**{¶43}** First, this argument was advanced by SafeAir, not the county. Second, Parks' affidavit states that "the architect erroneously used the wrong wage rate in putting together its bid documents * * *." But affidavits must be made on personal knowledge and "shall set forth such facts as would be admissible in evidence * * *." Civ.R. 56(E).

**{¶44}** Parks cannot know from personal knowledge what was inside the architect's head when he put the bid documents together. Further, he has failed to set

11

forth such facts as would be admissible in evidence in support. Civ.R. 56(E); *Chase Bank, USA v. Curren,* 191 Ohio App.3d 507, 2010-Ohio-6596, 946 N.E.2d 810, ¶17 (4th Dist.) To the extent that the lead infers that this is a determined issue, I do not join. Whether the architect erred remains an issue.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶45} The majority reverses the grant of summary judgment to appellees Alabasi and the county, finding that the change order altering the prevailing wages to be paid on this construction project rendered the contract ambiguous, to the extent that it is impossible to tell whether the change order was retroactive or not.. I respectfully disagree.

{¶46} The change order was issued on a standard American Institute of Architects form, AIA Document G701 – 2001, "Change Order." The contract date, March 28, 2013, is included as a standard entry, an identifier, at the top of the form. Beneath that is the space for the actual change being made to the contract: in this case that the prevailing wages were to be in compliance with Davis-Bacon, not the Ohio prevailing wage statutes. Nothing in the language used indicates this change is retroactive to the start date of the contract. The architect could have used such language, but did not. Above the signature lines, in bold capitals, is the phrase, "NOT VALID UNTIL SIGNED BY THE ARCHITECT, CONTRACTOR AND OWNER." As this only occurred August 9, 2013, I must conclude, like the trial court, that the change order was effective that date. This is unambiguous.

{¶47} I respectfully dissent.

12